## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY et al,** | § § § § | |
| *Plaintiffs,* | § § | **Civil Action No. 4:20-cv-04152** |
| **v.** | § § § | |
| **HEALTH AND MEDICAL PRACTICE ASSOCIATES et al,** | § § § | |
| *Defendants.* | § § § | |

## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS & SANTOS, P.C.**
Jason M. Davis
**Attorney-In-Charge**
State Bar No. 00793592
Southern District of Texas Bar No. 20114
E-mail: *jdavis@dslawpc.com*
H. Jay Hulings
State Bar No. 24104573
Southern District of Texas Bar No. 3472684
E-mail: *jhulings@dslawpc.com*
Stephanie L. Dodge
State Bar No. 24105336
Southern District of Texas Bar No. 3599198
E-mail: *sdodge@dslawpc.com*
719 South Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

I.     Nature and Stage of Proceeding ............................................................... 1

II.    Summary of the Argument ....................................................................... 1

III.   Relevant Factual Allegations................................................................... 3

IV.    Argument and Authorities ....................................................................... 5

    A.  Dismissal under Rule 12(b)(6)............................................................. 5

    B.  Plaintiffs fail to plead a viable RICO claim......................................... 6

        1.  Plaintiffs do not adequately allege RICO causation. ............................. 7

        2.  Plaintiffs do not adequately allege an "association-in-fact" RICO
            enterprise. ............................................................................... 11

            a.  Plaintiffs do not allege an association separate and apart from the
                alleged racketeering.......................................................... 12

            b.  Plaintiffs do not allege facts showing Defendants functioned as a
                continuing unit over time. .............................................. 14

        3.  Plaintiffs do not adequately allege that several of the Defendants
            conducted or participated in a RICO enterprise. ................................... 16

            a.  Plaintiffs allege that several of the entity Defendants merely received
                funds. .................................................................................. 17

            b.  Plaintiffs fail to allege that Coleman controlled the alleged RICO
                enterprise. ............................................................................ 18

        4.  Plaintiffs fail to adequately allege mail fraud with particularity. .......... 20

            a.  Plaintiffs fail to allege any actions by several Defendants. ............. 20

            b.  Plaintiffs fail to allege fraud by Coleman with sufficient
                particularity. ...................................................................... 21

            c.  Plaintiffs fail to allege fraud against Darlene O'Neal with sufficient
                particularity. ...................................................................... 22

    C.  Plaintiffs fail to plead a viable money had and received claim. ...................... 25

V.     Conclusion........................................................................................ 25

TO THE HONORABLE COURT:

Defendants Health and Medical Practice Associates, Robert A. O'Neal, D.C., Darlene O'Neal, Carefor Houston, PA a/k/a Carefor PA, James Slayton, D.O., Neches Anesthesia, Inc., ABC Surgical, LLC., ABC Surgical, LLC d/b/a Rolling Orthopedic, Medical Advanced systems, Inc., John Ray Hall, D.O., Randy Coleman, Donald E. Baxter, M.D., D. Ervin Baxter Ortho Spine, LLC, and Donald Colwell, D.C. (collectively, "**Defendants**")[1] hereby file this Motion to Dismiss First Amended Complaint (the "**Motion**"), and in support would respectfully show:

## I.    NATURE AND STAGE OF PROCEEDING

1.    Plaintiffs filed their Complaint on December 4, 2020, alleging violations of the Racketeering Influenced and Corrupt Organizations Act and money had and received. ECF No. 1.  During a Pre-Motion Conference, the Court granted Plaintiffs' request for leave to amend their Complaint prior to the filing of a motion to dismiss.  *See* ECF No. 13. Plaintiffs filed their First Amended Complaint (the "**Amended Complaint**") on April 23, 2021.  ECF No. 22.  Defendants now file this Motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II.    SUMMARY OF THE ARGUMENT

2.    Plaintiffs are a group of insurance companies that are involved in the

---

[1] The caption of the First Amended Complaint identifies Medical Advanced Systems, Inc. as a defendant.  Am. Compl. at 1 [ECF No. 22].  But the body of the First Amended Complaint does not mention Medical Advanced Systems, Inc. *at all*.  The total lack of allegations regarding Medical Advanced Systems, Inc. requires that the First Amended Complaint be dismissed in its entirety as to that entity.

business of providing insurance for automobile accidents to consumers.  *See* Am. Compl. ¶¶ 16–28.  Defendants are a group of medical practitioners, medical office staff, and medical practices. *See id.* ¶¶ 29–40. Plaintiffs allege that Defendants submitted fraudulent medical bills to personal injury attorneys who were representing insureds asserting claims against Plaintiffs. *See id.* ¶¶ 1–11.  Those attorneys (who are not named as parties) then allegedly incorporated Defendants' bills into settlement demands to Plaintiffs under *G.A. Stowers Furniture Co. v. American Indemnity, Co.*, 15 S.W.2d 544 (Tex. 1929), and its progeny. *See id.* ¶¶ 4–10.  Plaintiffs allege that they were damaged by paying more to resolve those claims than appropriate and assert two causes of action: (1) a claim under the Racketeering Influenced and Corrupt Organizations Act ("**RICO**"), 18 U.S.C. § 1962(c); and (2) a state law claim for money had and received.

3.      Plaintiffs could have challenged the reports, recommendations, and treatment decisions they now claim are fraudulent in state court, with the opportunity to call expert witnesses, to depose the insured and their doctors, and to rely on courts and juries to reject any inappropriate claims.  But Plaintiffs complain that the *Stowers* decision and other aspects of Texas law create litigation risks for Plaintiffs to challenge Defendants' medical opinions in state court, including the possibility of damages in excess of policy limits. *See id.* ¶¶ 4–10.  Plaintiffs have attempted to side-step those risks and the requirements of state law by changing the litigation playing field.

4.      Plaintiffs assert claims under federal law and in federal court against just one of the parties involved in the *Stowers* process—the medical professionals who provide health care services to accident victims.  These claims all-but ignore the central players in

2

the preparation and presentation of *Stowers* demands—the plaintiffs' lawyers who quarterbacked those demands and negotiated settlements with insurers. Plaintiffs instead launch a collateral attack against the medical judgments incorporated into those demands by characterizing disagreements regarding medical necessity—disputes that would be at the heart of state court personal injury litigation—as "fraud."

5.      The Amended Complaint demonstrates the folly of such forum-shopping. As detailed below, Plaintiffs fail to comply with a host of requirements for alleging a civil RICO claim—they fail to allege that the "fraud" was the but-for cause of any alleged harm, that the assortment of individuals and entities named as Defendants constitutes a viable RICO enterprise, and that several of the Defendants took any actions that could connect them to that enterprise. These failures require that the RICO claim be dismissed in its entirety. Plaintiffs also fail to allege fraud with sufficient particularity as to several Defendants, which requires that the RICO claim and the state law money had and received claim be dismissed as to those Defendants.

### III.   RELEVANT FACTUAL ALLEGATIONS

6.      Plaintiffs allege that Defendants: (1) prepared fraudulent examination reports to create the appearance that patients suffered serious injuries that warranted a type of spinal injection, referred to as "ESIs"; (2) prepared fraudulent billing and medical reports documenting ESIs that were not actually performed; (3) prepared fraudulent operative reports for the ESIs and trigger-point injections; (4) prepared bills from Health and Medical Practice Associates ("**HMPA**") or Carefor Houston PA ("**Carefor**") for those services; and (5) provided these documents and bills to the personal injury attorneys representing the

patients, who in turn submitted the bills and documentation to Plaintiffs as part of *Stowers* demands to settle the claims against Plaintiffs.  Am. Compl. ¶ 7.  Plaintiffs claim that Defendants' actions caused them to settle claims for insurance policy limits, allegedly resulting in more than $1 million in damages.  *Id* ¶ 66.

7.   Plaintiffs allege Robert A. O'Neal ("**Dr. O'Neal**") prepared fraudulent records of pre-ESI treatments for HMPA and Carefor patients.  *Id.* ¶ 29.  They further allege Dr. O'Neal recruited other doctors to perform ESIs based upon fraudulent records, maintained fraudulent post-ESI records, directed fraudulent surgical recommendations, and directed the creation of fraudulent billing records.  *Id.*

8.   Plaintiffs allege James Slayton, D.O. ("**Dr. Slayton**") and Donald Colwell, D.C. ("**Dr. Colwell**") prepared fraudulent records for HMPA and Carefor patients, directed other doctors to perform ESIs based upon fraudulent records, directed the "maintaining" of fraudulent post-ESI records, directed fraudulent surgical recommendations, and directed the creation of fraudulent billing records.  *Id.*

9.   Plaintiffs allege Donald E. Baxter, M.D. ("**Dr. Baxter**") and John Ray Hall, D.O. ("**Dr. Hall**") performed ESIs and trigger-point injections for HMPA based upon fraudulent records and performed procedures that were billed as ESIs that were not actually ESIs.  *Id.* ¶ 38, 40.  Plaintiffs also allege Dr. Baxter and Dr. Hall maintained fraudulent post-ESI records and provided fraudulent spinal surgical recommendations.  *Id.*

10.   Plaintiffs allege that HMPA, Carefor, ABC Surgical, LLC ("**ABC Surgical**"), Neches Anesthesia, Inc. ("**Neches Anesthesia**"), and D. Ervin Baxter, LLC ("**Baxter LLC**") are on-going legal entities that have received a portion of the funds

4

obtained through the scheme.  *Id.* ¶ 31–34, 39.

11.     Plaintiffs allege Randy Coleman ("**Coleman**") "used his law license" to create and "facilitate[]" corporate entities involved in the alleged scheme.  *Id.* ¶ 37. Plaintiffs further allege Coleman was involved in "developing" fraudulent surgical recommendations by identifying the industry-standard prices for certain procedures.  *Id.* ¶ 37, Ex. 23.

12.     Plaintiffs allege Darlene O'Neal ("**Mrs. O'Neal**") was involved in "orchestrating the preparing" of fraudulent records of pre-ESI treatment for HMPA patients.  *Id.* ¶ 30.  Plaintiffs also allege Mrs. O'Neal recruited doctors to perform ESIs based upon fraudulent records, directed the "maintaining" of fraudulent post-ESI records, directed the "procuring and providing" of fraudulent spinal surgical recommendations, and directed the "creating and maintaining" of fraudulent billing records.  *Id.*

13.     Plaintiffs support these conclusions with various alleged facts regarding fraudulent spinal injections, surgical recommendations, and billing practices, which are described in more detail as relevant below.  *Id.* ¶¶ 46-62.

## IV.     ARGUMENT AND AUTHORITIES

### A.  Dismissal under Rule 12(b)(6).

14.     Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim must be dismissed if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The general pleading standard set forth in Federal Rule of Civil Procedure 8(a) states that a pleading must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  While Rule 8(a) does not require "detailed

factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating that courts are not bound to accept as true legal conclusions couched as factual allegations).

15.    A claim cannot survive a Rule 12(b)(6) motion to dismiss unless it contains sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal citation and quotations omitted).  It is not enough to show "a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation and quotations omitted).  Dismissal is also warranted where the pleading offers only "a formulaic recitation of the elements of a cause of action" and "naked assertions" devoid of "further factual enhancement." *Id.* (internal citation and quotations omitted).

## B. **Plaintiffs fail to plead a viable RICO claim.**

16.    RICO is a broadly worded statute that "has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) (quoting S.Rep. No. 91–617, at 76 (1969) S.Rep. No. 91–617, at 76 (1969)).  "Because the civil RICO statute is an unusually potent weapon that entitles a prevailing plaintiff to treble damages, 18 U.S.C. § 1964(c), a RICO plaintiff must do more to defeat a motion to dismiss than simply to assert an inequity attributable to a defendant's conduct and tack on the self-serving conclusion that the conduct amounted

to racketeering." *Fuller v. Harrah's Entm't, Inc.*, No. CIV.A. 04-2108, 2004 WL 2452771, at *2 (E.D. La. Oct. 29, 2004) (cleaned up).  "In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

17.     As explained below, Plaintiffs fail to demonstrate a casual nexus between the activity and harm alleged.  They also fail to allege facts showing a viable RICO enterprise between all Defendants, that several of the Defendants participated in that enterprise, and that several of the Defendants acted with the requisite state of mind required to allege mail fraud, the RICO predicate in this case.

### 1.  Plaintiffs do not adequately allege RICO causation.

18.     RICO provides civil remedies only to a "person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  Plaintiffs must therefore show that the alleged violation "was the ***but-for*** and ***proximate cause***" of their alleged injuries.  *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015) (emphasis added).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation ***led directly*** to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added).  Links between the alleged violation and the alleged injury that are indirect, remote, or "purely contingent" are not sufficient to establish proximate and but-for causation.  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 2 (2010).

19.     Plaintiffs have inadequately alleged both ends of this causal chain—alleging fraud with insufficient particularity and describing the alleged injury in only the vaguest

terms.   But even disregarding those pleading deficiencies, Plaintiffs allege a fatally contingent chain of causation between Defendants' alleged actions and the harm Plaintiffs allegedly suffered.

20.     Plaintiffs do not allege that Defendants made any statements—fraudulent or otherwise—directly to Plaintiffs.   To the contrary, Plaintiffs allege that Defendants provided their medical bills and recommendations to ***personal injury attorneys***, who then independently packaged those bills and recommendations with those submitted by other entities into a settlement demand on behalf of an insured.   Am. Compl. ¶ 7.   Plaintiffs do not allege that Defendants had any control, authority, or direction over any such attorneys. They do not allege that Defendants coordinated, discussed, or conspired with any of these attorneys in crafting their recommendations and treatment.   They do not even identify any of the personal injury attorneys by name.   Plaintiffs thus ignore the central players in crafting, communicating, and negotiating the settlement demands at issue—third parties whose independent decisions could act as one of several breaks in the causal chain.   *See Hemi*, 559 U.S. at 10-11 (holding that a "theory of liability [that] rests not just on separate *actions*, but separate actions carried out by separate *parties*" was too contingent to establish RICO causation (emphasis in original)).

21.     Plaintiffs do not even allege that Defendants' bills were the ***only*** bills included in the settlement demands.   Indeed, the exhibits attached to the Amended Complaint conclusively demonstrate otherwise.   For instance, Exhibit 1 to the Amended Complaint is a *Stowers* demand that identifies charges by HMPA as constituting only $7,576.50 of the total $50,987.50 incurred, with a hospital unrelated to Defendants alone

charging more than $26,762. That exhibit does not indicate whether the total costs were already over policy limits (as appears likely), which would make any additional costs largely irrelevant to the decision whether to pay limits. Similarly, Exhibit 2 to the Amended Complaint identifies charges by HMPA as constituting only $37,487 of the $80,623 in costs already incurred, a total that exceeds the $50,000 policy limit. The settlement demands attached as Exhibits 3, 4, 5, and 6 are comparable.

22. Plaintiffs also do not identify the extent to which Defendants' alleged recommendation of unnecessary medical procedures increased the future costs identified in any of the *Stowers* demands. The *Stowers* demand attached as Exhibit 1, for example, identified costs that already exceeded likely policy limits and claimed $308,025 in additional future medical costs. Plaintiffs do not deny that this insured required ***some*** future treatment. They merely contend that less costly alternatives to surgery could be available. *See* Am. Compl. ¶ 8. The failure to identify those future costs is critical—indeed, fatal—to proximate cause. For a demand like that in Exhibit 1, in which costs are already at or above policy limits, there would be little practical difference between future costs of, say, $100,000 and the $308,025 claimed in the demand. Both are ***far beyond*** coverage limits and thus support a decision to settle and pay policy limits. *See Farmers Ins. Exchange v. First Choice Chiropractic & Rehabilitation*, No. 3:13-CV-01883-PK, 2016 WL 10827072, at *21-22 (D. Or. 2016 Feb. 25, 2016) (holding that plaintiffs who conceded that some of the bills submitted by doctors were legitimate could not show that the alleged overstatement of other bills proximately caused plaintiffs to settle cases).

23.     Plaintiffs further allege that their ability to challenge any settlement demand, individual medical bill, or treatment recommendation is limited by the *Stowers* doctrine, which allegedly pressures insurers to accept settlement demands at policy limits by placing too much financial risk on challenging a claim in court.  Am. Compl. ¶ 6.  The Amended Complaint itself undermines that contention by citing examples of cases that did proceed to litigation and in which Plaintiffs challenged medical bills and recommendations submitted by Defendants in state court.  *See id.* ¶¶ 59, 61.  Plaintiffs nonetheless insinuate that the *Stowers* doctrine creates too much financial risk for Plaintiffs to litigate each case on its merits, requiring that Plaintiffs end-run state law and challenge doctors' medical recommendations through this case and others.

24.     This combination of intervening factors alleged in the Amended Complaint is thus distinguishable from other decisions in which courts have found proximate cause.  In *Plambeck*, for example, the Fifth Circuit found that a group of insurers had introduced sufficient evidence to show that the false statements of doctors caused them to overpay for insurance claims.  802 F.3d at 676-77.  But the law firms and doctors at issue in that case were run and funded by the ***same defendants***, who closely oversaw the entire operation— from recruiting accident victims, to performing chiropractic services, to drafting and submitting settlement demands to insurance companies.  *Id.* at 671-72; *see also State Farm Mut. Auto Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F.Supp.3d 772, 778-779 (E.D. Mich. 2015) (denying motion to dismiss complaint that alleged a management group controlling treatment had "quid pro quo cross-referral relationships with personal injury

attorneys").[2]  No such coordination or control is alleged in this case.

25.     Plaintiffs cannot simply claim "fraud" and hope the Court ignores the causal chain between that claim and a decision to settle for policy limits.  They must allege facts showing that Defendants' alleged overstatement of bills and recommendations was the "but-for" cause of their alleged harm—i.e., that Plaintiffs would not have settled for policy limits had it not been for Defendants' actions.  The facts alleged in the Amended Complaint present a muddle of plaintiffs' attorneys, unrelated medical bills, admittedly legitimate costs and procedures, and state law that allegedly impacted Plaintiffs' decision to settle a claim for policy limits.  This muddle is far from the tight, direct, "but-for" causal chain that RICO requires.  The RICO claim must therefore be dismissed as to all Defendants.

## 2. Plaintiffs do not adequately allege an "association-in-fact" RICO enterprise.

26.     One of the changes between Plaintiffs' original Complaint and their Amended Complaint is a subtle change in the alleged RICO enterprise.  The original Complaint alleged that HMPA was itself the RICO enterprise, a problematic allegation as HMPA cannot be both a defendant and the RICO enterprise.  Complaint [ECF No. 1] ¶ 68; *see also Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (holding that to state a claim under subsection (c), a plaintiff must demonstrate that "the RICO person is distinct from the RICO enterprise").  The Amended Complaint attempts to rectify this error by alleging

---

[2] In *Allstate Ins. Co. v. Benhamou*, 190 F.Supp.3d 631, 644-46 (S.D. Tex. 2016), the court found the actions of third-party attorneys were not, by themselves, sufficient to break the causal chain.  But that decision did not address the types of claims at issue here, in which uncontested charges from other medical facilities and admittedly legitimate future medical treatment had already pushed claims past policy limits.  *See id*.

that HMPA was a "participant" in a RICO enterprise.  Am. Compl. ¶ 68.  This statement appears to allege that the Defendants were members of an "association-in-fact" RICO enterprise, though the Amended Complaint does not use that term or otherwise attempt to scope out the parameters of that association.  This shift in definition may address one perceived problem in Plaintiffs' pleading, but it creates a host of other problems that also require the RICO claim be dismissed.

27.     Plaintiffs must do more than use the words "participant" and "association" to adequately allege an association-in-fact under RICO.   "An 'association-in-fact' enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual, decision-making structure." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988).  The ill-defined collection of entities and individuals identified in the Amended Complaint falls far short of this exacting standard.

a.  <u>Plaintiffs do not allege an association separate and apart from the alleged racketeering.</u>

28.     The Amended Complaint does not allege that the purported association between Defendants exists "separate and apart" from the alleged pattern of racketeering.  Plaintiffs do not allege that all of these Defendants work together to provide medical services to other patients outside of the insured making *Stowers* demands to Plaintiffs.  Though the Amended Complaint could be read to allege that ***some*** of these Defendants work together outside of the alleged scheme (for example, HMPA and its owners), it does

12

not allege that **all** of the Defendants worked together in any capacity outside of the alleged scheme to defraud Plaintiffs.   Plaintiffs thus cannot allege an association-in-fact that includes all of the named Defendants.

29.     Courts in this district and elsewhere in Texas have dismissed complaints that included comparable allegations of an association-in-fact.   In *Allstate Ins. Co. v. Donovan*, Civil Action No. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012), for example, a group of insurance companies alleged that the defendants (a collection of doctors and medical practices) participated in a scheme to inflate medical bills and recommendations to induce higher-than-necessary settlements from the plaintiffs.   As in the present case, the plaintiffs in *Donovan* did not allege any connection between the defendants other than the alleged scheme to defraud.   *Id.* at *13.   The court concluded that these allegations failed to establish an association-in-fact and granted the motion to dismiss, holding:

> Because these allegations are not capable of establishing that the enterprise treats other, legitimate, patients, i.e., patients whose claims are not fraudulently inflated, plaintiff's allegations are not capable of establishing that the association-in-fact enterprise exists for a purpose other than the claimed purpose of engaging in a scheme to defraud insurance companies . . . ."

*Id.* (cleaned up).

30.     The *Donovan* court relied on the Northern District's decision in *State Farm Mut. Automobile Ins. Co. v. Giventer*, 212 F.Supp.2d 639 (N.D. Tex. 2002), which addressed comparable facts and reached the same conclusion.   As in *Donovan* and the present case, the plaintiffs in *Giventer* alleged that a collection of doctors, medical practices, and law offices constituted an association-in-fact enterprise.   But the plaintiffs

did not allege any association between the defendants other than the alleged scheme to inflate *Stowers* demands:

> In other words, there is no evidence that the association of law office and chiropractic clinics ***existed separate and apart*** from the alleged pattern of racketeering.  Aside from the alleged predicate acts, there appears to be nothing which binds the association together.

*Id.* at 650–51 (emphasis added).  The *Giventer* court therefore found that the plaintiffs' RICO claims "failed as a matter of law" and dismissed those claims with prejudice.  *Id.* at 651, 653.[3]

31.     Plaintiffs' allegations are functionally indistinguishable from those in *Donovan* and *Giventer*.  Their failure to allege an association between all of the Defendants that exists outside of the alleged scheme itself requires that the RICO claim be dismissed in its entirety.

          b.     <u>Plaintiffs do not allege facts showing Defendants functioned as a continuing unit over time.</u>

32.     Plaintiffs' attempt to sweep all of Defendants into one supposed RICO enterprise also fails to establish that they functioned as a continuing unit over time, the third element of an association-in-fact.  *See Delta Truck*, 855 F.2d at 243.

33.     The Amended Complaint does not allege how this collection of Defendants began working together, who directed the activities of its various members, or identify alleged communications, agreements, or other coordination between them.  It also does not

---

[3] By contrast, the court in *Benhamou* the court found allegations of an association-in-fact to be sufficient because the plaintiffs alleged that the association involved only one entity and its two owners—a much tighter association than the sprawling collection of individuals and entities at issue in *Donovan* or in this case.  190 F.Supp.3d at 654.

allege a hierarchical structure that binds *all* of the Defendants together.   Rather, the Amended Complaint alleges that *some* of the Defendants worked together through HMPA. Am. Compl. ¶ 29–30, 35–37.   But it does not allege any connection between those Defendants and the broader collection of doctors and medical entities named as Defendants, including Dr. Baxter, Dr. Hall, and the various non-HMPA entities.

34.     As described in the Amended Complaint, the alleged association-in-fact is thus little more than a collection of independent actors providing some sort of service—or in the case of several of the Defendant entities, merely receiving money—that is somehow associated with the alleged scheme to inflate *Stowers* demands.   Those bare-bones allegations do not allege facts showing that Defendants functioned as a continuing organization with any kind of identifiable structure.

35.     The decision in *Donovan* is again instructive.  The plaintiffs there identified "the specific roles that each defendant plays in providing healthcare services to their injured patients and running their respective businesses" and that the defendants inflated their costs and medical recommendations as part of a fraudulent scheme.   *Donovan*, 2012 WL 2577546 at *13–14.   The court found those allegations to be insufficient:

> Merely pleading that there ***are several businesses and individuals that sometimes work with each other and that some of the physicians made misrepresentations*** that caused plaintiffs to pay more in settlements is not sufficient to plead that defendants have any liability under [RICO].

*Id.* at *14 (emphasis added).  The plaintiffs' failure to allege facts establishing, among other things, "how the alleged scheme was formed" and "whether there were communications, agreements, or an understanding between the alleged parties that advanced the fraud"

doomed plaintiffs' RICO claims.  *Id.*

36.     Other decisions of this Court are substantially in accord.  *See Gonzalez v. Bank of America*, No. 09-2946, 2011 WL 13261985, at *7 (S.D. Tex. Feb. 20, 2011) (finding that the plaintiff had failed to allege an association-in-fact between a bank and several independent insurance companies because "each party's conducting of its own affairs is not hierarchical or consensual decision making or an ongoing organization"); *Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*, No. CV 2:16-463, 2017 WL 9535076, at *9 (S.D. Tex. June 30, 2017) (finding the plaintiff had failed to allege a RICO association-in-fact where the plaintiff failed "to allege any facts showing the organizational characteristics, structure, or decision-making process of the enterprise").

37.     Plaintiffs may have alleged that ***some*** of the Defendants functioned as a continuing unit over time.  But they have over-reached and attempted to sweep in a host of other individuals and entities with tangential relationships to HMPA.  That grasp for other potential pockets renders the alleged association-in-fact between the motley collection of Defendants in this case no different than that alleged in *Donovan.*  This Court should reach the same conclusion as *Donovan*, find that Plaintiffs fail to allege that all Defendants acted as a continuing unit over time, and dismiss the RICO claim.

### 3. Plaintiffs do not adequately allege that several of the Defendants conducted or participated in a RICO enterprise.

38.     Section 1962(c) imposes civil liability only on those who "conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  In order to "participate, directly or

indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "Receiving funds or materials on its own, without more, does not show that [defendants] actually operated the scheme to obtain those funds or materials." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012), as revised (Jan. 12, 2012). Plaintiffs' allegations against several of the Defendants fall far short of this standard.

        a.  <u>Plaintiffs allege that several of the entity Defendants merely received funds.</u>

39.    The only allegation against several of the entity Defendants—ABC Surgical, Neches Anesthesia, and Baxter LLC—is that they "received a portion of the funds" obtained through the alleged scheme. Am. Compl. ¶¶ 32–34, 38–40. The Fifth Circuit has expressly held that the same allegations that an entity received funds from an alleged RICO scheme, without more, do not adequately allege that plaintiffs operated or managed the alleged RICO scheme. *See Moreno*, 667 F.3d at 551.

40.    Other courts in the Fifth Circuit have followed the Fifth Circuit's guidance and rejected the same types of allegations. In *Wang v. Ochsner Medical Center-Kenner, L.L.C.*, for example, the district court noted that federal RICO violations require "affirmative wrongdoing," as opposed to "passive acquiescence." No. CV 17-5134, 2017 WL 6055167, at *11 (E.D. La. Dec. 7, 2017). The court therefore found that "financially benefitting from another's conduct or scheme is not sufficient to show that one actually operated the scheme to defraud" and dismissed the plaintiff's RICO claim. *Id.*; *see also Benhamou*, 190 F.Supp.3d at 656 ("As already discussed, and as [defendants] correctly

17

note, neither the provision of goods or services, the mere existence of a business relationship, simple contributions with knowledge of the scheme, nor the receipt of funds or materials from the scheme is sufficient to subject one to RICO liability."). Plaintiffs' RICO claim against ABC Surgical, Neches Anesthesia, and Baxter LLC must therefore be dismissed.

      b.  <u>Plaintiffs fail to allege that Coleman controlled the alleged RICO enterprise.</u>

41.    Plaintiffs' allegations against Coleman are almost as thread-bare. Plaintiffs generally allege Coleman "used his law license" to "create[e] and facilitate[e] corporate entities that are involved in the alleged scheme." Am. Compl. ¶ 37. Plaintiffs further allege Coleman was "directly and personally involved" in developing the fraudulent surgical recommendation charges utilized to perpetuate the scheme. *Id.* Neither of these conclusory allegations are actually supported by the facts alleged in the Amended Complaint.

42.    Plaintiffs do not explain—or allege any facts that suggest—that merely filing the paperwork to create an LLC is somehow directing a RICO enterprise. Such activities fall squarely into "providing services," which this Court has consistently held is not sufficient to show a defendant participated in or managed a RICO scheme. *Benhamou*, 190 F.Supp.3d at 656; *see also Compass Bank v. Villarreal*, No. CIV.A. L-10-8, 2011 WL 1740270, at *13 (S.D. Tex. May 5, 2011) (collecting cases) ("Having a business relationship with a RICO enterprise does not constitute operation and management of the enterprise's affairs necessary for RICO liability.").

43.    Similarly, the only fact cited in support for Plaintiffs' allegation that

18

Coleman helped develop "fraudulent surgical recommendation[s]" is Dr. Baxter's testimony that an attorney (presumably Coleman) helped him gather records from other physicians' charges to use as a basis for his own fee recommendations. Am. Compl., Ex. 23. Plaintiffs again fail to allege any facts suggesting how attorney research into the industry-standard price for a procedure is somehow fraudulent, let alone that such research constitutes "developing" a doctor's surgical recommendation. They also do not allege that Coleman had any reason to believe that this research was anything other than an innocuous and legitimate service. *See Benhamou*, 190 F.Supp.3d at 656.

44.     Finally, Plaintiffs also fail to allege that Coleman had a supervisory role in the scheme, an omission that is itself fatal to the RICO claim against Coleman. *See Plambeck,* 802 F.3d at 675 (acknowledging that defendants had limited roles but nevertheless finding they "participated in managing the enterprise with their supervisory roles in their respective parts of the scheme."); *Benhamou*, 190 F.Supp.3d at 655 ("Although one need not be a ringleader, the Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s conduct or participate requirement."); *see also Interallianz Bank AG v. NYCAl Corp.*, No. 93 CIV. 5024, 1994 WL 177745 at *3, 7 (S.D.N.Y., May 6, 1994) (Bank's provision of account services to RICO enterprise and financing of RICO enterprise's transactions did not satisfy *Reves* test).[4]

---

[4] Plaintiffs' allegations that Coleman received funds from the alleged RICO entity, *see* Am. Compl. ¶ 37, are similarly insufficient for the reasons noted above.

45.     Plaintiffs' RICO claim against Coleman must therefore be dismissed.

### 4.   Plaintiffs fail to adequately allege mail fraud with particularity.

46.     When a complaint alleges claims sounding in fraud, Rule 9(b) requires that plaintiffs plead the underlying factual circumstances with particularity.  Fed. R. Civ. P. 9(b).  Rule 9(b)'s particularity requirement applies to the pleading of mail fraud as a predicate act in a RICO case.  *See Benhamou*, 190 F. Supp. 3d at 642.  Rule 9(b) requires Plaintiffs to plead the "who, what, when, where, and how" of the alleged fraud.  *Id.*

47.     The elements of RICO mail fraud are: (1) a scheme to defraud by means of false or fraudulent representation; (2) interstate or intrastate use of the mails to execute the scheme; (3) the use of the mails by the defendant connected with or incident to the scheme; and (4) actual injury to the plaintiff.  *Id.* at 657–58.  The Fifth Circuit also requires that a plaintiff allege that the defendant knew the scheme involved false representations and acted with the specific intent to defraud.  *See United States v. Plato*, 593 F. App'x 364, 369 (5th Cir. 2015); *Benhamou*, 190 F. Supp. 3d at 659 ("[I]dentifying circumstances that indicate conscious behavior on the part of the defendant will support an inference of fraud and satisfy Rule 9(b).").  Plaintiffs fail to comply with these requirements in multiple ways.

### a.   Plaintiffs fail to allege any actions by several Defendants.

48.     As noted above, the only allegations concerning several entity Defendants—ABC Surgical, Neches Anesthesia, and Baxter LLC—are that each is an on-going legal entity and has received a portion of the funds obtained through the scheme.  Am. Compl. ¶¶ 31–34, 39.  Those allegations not only fail to allege control of a RICO enterprise, as

20

discussed above, they also fail to allege participation in a mail fraud scheme with sufficient particularity. *See Benhamou*, 190 F. Supp. 3d at 659 ("[S]everal district courts in this circuit have found plaintiffs' RICO complaints inadequate when each defendant's conduct is not specified.") (collecting cases). The absence of any substantive allegations against these Defendants provides an independent ground to dismiss the RICO claim as to them.

<blockquote>b. <u>Plaintiffs fail to allege fraud by Coleman with sufficient particularity.</u></blockquote>

49.     Plaintiffs similarly fail to allege sufficient factual allegations as to Coleman. Plaintiffs assert the legal conclusion that Coleman acted "with specific intent to defraud Plaintiffs." Am. Compl. ¶ 37. But the facts alleged in the Amended Complaint do not support that conclusion or otherwise give rise to an inference of fraudulent intent.

50.     First, the bare allegation that Coleman created some corporate entities, *see* Am. Compl. ¶ 37, does not by itself indicate any conscious behavior supporting fraud. Plaintiffs do not (and, of course, cannot) allege there anything inherently improper with a lawyer creating a legal entity. They do not allege that there was anything improper in how those entities were formed, that the structure of the entities was relevant to the scheme, or (as noted above) that several entities actually did anything to further the scheme. Plaintiffs merely allege that Coleman provided a legal service that was itself innocuous. Such allegations do not infer willful participation in a scheme to defraud.

51.     Plaintiffs' allegation that Coleman helped a doctor identify industry-standard pricing is similarly insufficient. Even assuming that the deposition excerpt attached to the Amended Complaint actually refers to Coleman, Plaintiffs do not allege any facts showing

that there is anything wrong with helping a doctor identify the market price for a particular service.  *See* Am. Compl., Ex. 23.   To the extent that there is any wrongdoing in this allegation, it is ***not*** in identifying the industry-standard price for a particular procedure, but in actually recommending that procedure in the first place.  As Plaintiffs do not allege that Coleman had anything to do with recommending the procedure—or had any reason to believe that doing so was improper—there mere identification of the industry price fails to show "conscious behavior on the part of the defendant will support an inference of fraud and satisfy Rule 9(b)."  *Benhamou*, 190 F. Supp. 3d at 659.  This failure to alleged fraudulent intent is an independent ground to dismiss the RICO claim against Coleman.

> c. <u>Plaintiffs fail to allege fraud against Darlene O'Neal with sufficient particularity.</u>

52.     Plaintiffs' allegations against Darlene O'Neal are also strikingly thin. Plaintiffs assert conclusory allegations that Mrs. O'Neal was involved in recruiting doctors to perform ESIs based on "fraudulent" records, maintaining "fraudulent" records, and verifying the reasonableness and necessity of Defendant's billings.  *Id.*  Plaintiffs tack on to these quasi-factual allegations the contention that Mrs. O'Neal acted "knowingly" and "with knowledge that the mails would be part of the execution of the fraud."  *Id.*

53.     Notably, Plaintiffs do not allege that Mrs. O'Neal acted ***willfully*** and with ***the intent to defraud.***  They do not even include the boilerplate, conclusory allegations asserted against other Defendants. *See, e.g.*, Am. Compl. ¶¶ 35, 36, 38, 40,  This failure to allege intent to defraud—even in conclusory form—itself requires that the RICO claim against Mrs. O'Neal be dismissed.  *See Plato*, 513 App'x. at 369.

54.     Even if the Court were to attempt to divine an inference of fraudulent intent from the Amended Complaint's sparse allegations against Mrs. O'Neal, those allegations do not identify sufficient facts to give rise to such an inference.  Plaintiffs only generally allege that Mrs. O'Neal was involved in maintaining and verifying "fraudulent" reports. They do not allege any facts explicating the role Mrs. O'Neal had in preparing or maintaining those reports or even allege that she substantively reviewed any of the records she purportedly maintained.  Plaintiffs also do not allege that Mrs. O'Neal is a doctor, has medical training, or has any reason to understand that a particular recommendation in a particular case was not medically necessary.  The mere fact that Mrs. O'Neal is married to Dr. O'Neal does not somehow impute Dr. O'Neal's knowledge to his wife.   These allegations thus fail to establish *either* the "who, what, where, when, and how" of the alleged fraud or fraudulent intent.  *See Benhamou*, 190 F. Supp. 3d at 642

55.     But even if Plaintiffs had alleged that Mrs. O'Neal was aware of the contents of the records she allegedly "maintained," there is nothing in the records themselves that would give rise to an inference of fraud.  Plaintiffs purport to identify various ways in which the records were "fraudulent," including in that the reports incorporated analysis conducted by Dr. Colwell and that several were not signed by doctors.  *See* Am. Compl. ¶¶ 56-62.  But a close examination of the records themselves—as they are described in the Amended Complaint—reveals little more than a string of innocuous practices that do not, by themselves, suggest any wrongdoing.

56.     For instance, Plaintiffs allege that the reports of patient examinations before ESIs were "fraudulent" because the reports incorporated information obtained from

patients by Dr. Coleman or other medical professionals.  *See* Am. Compl. ¶¶ 56, 57.  But Plaintiffs do not allege that it was improper for a nurse, chiropractor, or other medical technician to gather the blood pressure, temperature, results of an MRI, or other medical information that a doctor considered in making a recommendation.  They do not allege that the doctor approving the form was *obligated*—by medical standards or otherwise—to gather *personally* every bit of information included in the report.  And they certainly do not allege that Mrs. O'Neal was aware of any such obligation.

57.     Plaintiffs' suggestion that HMPA doctors did not personally draft the reports they signed is similarly deficient.  *See id.* ¶ 57.  The reports *themselves* indicate that they were written by somebody other than the doctor who signed them.  A report identified in the Amended Complaint, for example, includes the notation "SS/ac" at the bottom, indicating that it was written by an assistant or secretary with the initials "ac."  *Id.*   The report also states that "[t]his note has been dictated, but not read, and is subject to dictation and transcription variance."  *Id.*  There is no alleged reason for Mrs. O'Neal—or for the Court—to conclude that there was anything improper in an assistant typing up a doctor's notes.

58.     As a final example, Plaintiffs fail to allege that Mrs. O'Neal had any contact with Dr. Key, was aware of whether he was capable of providing medical service, or have any reason to believe that the bills submitted by Dr. Key were improper.  Indeed, Plaintiffs do not allege when Dr. Key received his cancer treatments, when he was out of the office, or any other facts that could support their suggestion that Dr. Key did not conduct the procedures for which he billed.  *See* Am. Compl. ¶ 62.  The list of procedures included in

the Amended Complaint indicates that Dr. Key only worked on one or two days a month in late 2016, leaving month-long gaps for his treatment and recovery. *Id.* Nothing in those bills suggest any fraudulent intent by Mrs. O'Neal.

59.     The Court should therefore dismiss the RICO claim as to Mrs. O'Neal.

### C. **Plaintiffs fail to plead a viable money had and received claim.**

60.     To state a claim for common law money had and received, Plaintiffs must allege that each Defendant was paid money for dishonest claims. *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). For the reasons noted above, Plaintiffs have not adequately alleged fraud against ABC Surgical, Neches Anesthesia, Baxter LLC, Coleman, and Mrs. O'Neal. The money had and received claim must therefore be dismissed as to these Defendants for the same reasons. Moreover, this Court only has jurisdiction over the state court money had and received claim because it is paired with the RICO claim, which provides federal question jurisdiction. *See* Am. Compl. ¶¶ 13-14. If the Court grants the Motion and dismisses the RICO claim as to each Defendant on the grounds urged above—and it should—the Court should also dismiss the money had and received claim for lack of jurisdiction. *See Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) (reviewing factors for retention of supplemental jurisdiction and finding abuse of discretion in refusal to remand after federal questions had been dismissed).

### V.   CONCLUSION

61.     For the reasons stated above, the Amended Complaint does not state claims under which relief can be granted and should be dismissed. Defendants further request all additional relief to which they may be justly entitled.

DATED: May 28, 2021.

Respectfully submitted,

**DAVIS & SANTOS, P.C.**

By: _/s/ Jay Hulings_
    Jason M. Davis
    **Attorney-In-Charge**
    Texas State Bar No. 00793592
    Southern District No. 20114
    Email: jdavis@dslawpc.com
    H. Jay Hulings
    Texas State Bar No. 24104573
    Southern District No. 3472684
    Email: jhulings@dslawpc.com
    Stephanie L. Dodge
    Texas State Bar No. 24105336
    Southern District No. 3599198
    Email: sdodge@dslawpc.com
    719 S. Flores Street
    San Antonio, Texas 78204
    Tel: (210) 853-5882

    *Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

I certify that counsel for Defendants and counsel for Plaintiffs have discussed Defendants' arguments in support of a motion to dismiss Plaintiffs' allegations on multiple occasions.  These discussions preceded and included the pre-conference letter filed by Defendants on February 22, 2021 [ECF No. 10], Plaintiffs' response to that letter filed on February 26, 2021 [ECF No. 12], and the parties' pre-motion conference on March 4, 2021, among other discussions.

 */s/ Jay Hulings*
Jay Hulings

## CERTIFICATE OF SERVICE

I certify that on the 28th day of May 2021, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

 */s/ Jay Hulings*
Jay Hulings