UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY et al, <br><br> *Plaintiffs,* <br><br> v. <br><br> HEALTH AND MEDICAL PRACTICE ASSOCIATES et al, <br><br> *Defendants.* | § § § § § § § § § § § § § § § § Civil Action No. 4:20-cv-04152 |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

Defendants Health and Medical Practice Associates, Robert A. O'Neal, D.C., Darlene O'Neal, Carefor Houston, PA a/k/a Carefor PA, James Slayton, D.O., Neches Anesthesia, Inc., ABC Surgical, LLC., ABC Surgical, LLC. d/b/a Rolling Orthopedic, Medical Advanced systems, Inc., John Ray Hall, D.O., Randy Coleman, Donald E. Baxter, M.D., D. Ervin Baxter Ortho Spine, LLC, and Donald Colwell, D.C. (collectively, "**Defendants**") hereby file this Reply in Support of their Motion to Dismiss First Amended Complaint, and in support would respectfully show:

### I. INTRODUCTION

1. The unstated but plain purpose behind this litigation is to undermine the business model that leads to many personal injury claims against the Plaintiffs' insurance

policies. That business model – with trial lawyers preparing and submitting *Stowers* demands to insurers – is the product of Texas law and plays out routinely in state courts. Plaintiffs apparently do not believe they can effectively rebut these claims in court and are therefore attempting to end-run the state courts by asserting federal claims against the doctors and medical professionals who treat the insured.

2. Plaintiffs are not alone in launching this collateral attack against medical professionals. As is evident in the briefing submitted by both parties, other insurance companies have asserted similar claims against other medical professionals, with varying success. Plaintiffs have essentially adopted the template insurance company pleading from those other cases. But facts are stubborn things, and the facts relating to these Defendants' practices (even as Plaintiffs allege) do not conform to the generic template applied in other cases.

3. As detailed in Defendants' Motion to Dismiss the First Amended Complaint, ECF No. 28 (the "**Motion**"), several of the entities and individuals named as Defendants are only tangentially related to the alleged scheme. The allegations against these Defendants fail to meet the standards of RICO or Rule 9, requiring that these Defendants be dismissed. The First Amended Complaint, ECF No. 22 (the "**Complaint**"), also fails to allege a viable association-in-fact RICO enterprise and pleads facts that undermine its own allegations of RICO causation, failures that require the claim be dismissed.

4. Plaintiffs' Response to Defendants' Motion to Dismiss, ECF No. 35 (the "**Response**"), does little more than rearrange the deck chairs, attempting to embellish their pleadings and asserting (without explaining) that the decisions of other district courts are

1

somehow controlling. The Response does not alter the relief required by the Motion: dismissal of the Complaint.

## II. THE *PUNJWANI* DECISION IS NOT "IDENTICAL" TO THIS CASE

5. Plaintiffs claim in their "Executive Summary" that *State Farm Mut. Auto. Ins. Co. v. Punjwani*, No. H-19-cv-1491, 2019 WL 7372215 (S.D. Tex. Dec. 31, 2019), involved an "identical" complaint, "identical" alleged facts, and an "identical" motion to dismiss. Response ¶ 1. This claim is bizarre, as *Punjwani* is far from "identical" in any of these respects.

6. First, the plaintiffs in *Punjwani* alleged that one of the defendants (the entity for which the lead defendant worked) **was itself the RICO enterprise**. *See id.* at *4. Here, by contrast, Plaintiffs allege an association-in-fact between multiple entities and individuals, a claim that involves particular pleading requirements (as detailed in the Motion). Second, the movant in *Punjwani* was the central player in the alleged scheme and the allegations against him were highly detailed. *Id.* at *3. Defendants have focused their challenge on the allegations against several entities and individuals who are **at best** peripheral players in the alleged scheme and are barely mentioned in the pleadings. *See* Motion, ¶¶ 38–59. Third, the defendants in *Punjwani* apparently did not challenge RICO causation, as Defendants have in this case. 2019 WL 7372215 at *2–18. *Punjwani* is thus not only distinguishable but less applicable to the alleged facts of this case than *Donovan*, *Giventer*, and the other cases described in the Motion and below.

### III. PLAINTIFFS' ALLEGATIONS AGAINST SEVERAL ENTITIES AND TWO INDIVIDUAL DEFENDANTS LACK SUFFICIENT BASIS FOR LIABILITY

7.      The Motion pointed out that the Complaint includes only minimal factual allegations against ABC Surgical, LLC and ABC Surgical, LLC d/b/a Rolling Orthopedic (collectively "**ABC Surgical**"), Neches Anesthesia, Inc. ("**Neches Anesthesia**"), D. Ervin Baxter Ortho Spine, LLC ("**Baxter LLC**"), Randy Coleman ("**Coleman**"), and Darlene O'Neal ("**Mrs. O'Neal**").  Motion ¶¶ 38–59.  The Response attempts both to embellish these allegations and to insist that those allegations are sufficient to state a claim.  Neither effort succeeds.

   A. **Plaintiffs' claims against three entities are insufficient as a matter of law.**

8.      The Response argues that ABC Surgical, Neches Anesthesia, and Baxter LLC were the "tools" through which other Defendants operated the alleged scheme and therefore comprise parts of a "dependent business structure."  Response ¶ 29.  These allegations are not actually included in the Complaint, which alleges *only* that the entities received funds through the alleged scheme.  *See* Complaint ¶¶ 32, 34, 39.  The law is clear that the allegations as Plaintiffs actually pled them are insufficient as a matter of law.

9.      As detailed in the Motion, Plaintiffs must allege that *each and every* defendant had some part in directing the conduct of the alleged RICO enterprise.  *See Reves v. Ernst & Young*, 507 U.S. 170, 170 (1993).  The Fifth Circuit (and other courts) have emphasized that "[r]eceiving funds or materials, on its own, without more does not show that [defendants] actually operated the scheme to obtain those funds or materials." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012), as revised (Jan. 12. 2012); *see*

3

*also Wang v. Ochsner Medical Center-Kenner, L.L.C.*, No. CV 17-5134, 2017 WL 6055167, at *11 (E.D. La. Dec. 7, 2017).

10. Yet that is *exactly* what the Complaint alleges as to these entities. The *sole* factual allegation as to ABC Surgical, Neches Anesthesia, and Baxter LLC is that that these entities received funds from the alleged scheme. Plaintiffs cannot escape the unambiguous direction of the Fifth Circuit and, notably, Plaintiffs do not address the *Moreno* decision *at all* in the Response.[1] Plaintiffs' allegations as to these entities thus fail to allege participation in a RICO enterprise as a matter of law, which by itself requires that the Complaint be dismissed as to these entities.

11. Plaintiffs' allegations as to these entities also fails to plead mail fraud with the particularity required by Rule 9(b). *See Benhamou*, 190 F. Supp. 3d at 659 (collecting cases and applying the principle that plaintiffs must identify specific actions of specific defendants at specific times that would constitute fraud). Plaintiffs' pleadings do not identify *any specific actions* taken by any of these entities, other than the receipt of funds. Plaintiffs do not even allege – even through a bare conclusion – that these entities received the funds with the intent to defraud. This near absence of allegations against ABC Surgical, Neches Anesthesia, and Baxter LLC thus provides an additional ground to dismiss the Complaint as to these entities.

---

[1] The Response's citation to *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 654–655 (S.D. Tex. 2016) is puzzling, as that case actually *supports* dismissal of these entity defendants, holding that "the receipt of funds or materials on its own, without more, will not establish a defendant actually operated the scheme" (citing *Moreno*, 667 F.3d at 551).

4

### B. Plaintiffs' allegations against Coleman also fail.

12. The Motion also pointed out that the threadbare allegations against Coleman fail to allege that he participated in a RICO enterprise or had the requisite intent for Plaintiffs to allege a fraud claim. *See* Motion ¶¶ 41–44, 49–51. In their Response, Plaintiffs attempt to embellish their allegations and claim that those modified allegations are sufficient. These attempts fail.

13. As detailed in the Motion, courts have consistently refused to hold that the mere provision of goods and services to a RICO enterprise constitutes participation in that enterprise. *See Compass Bank v. Villarreal*, No. CIV.A. L-10-8, 2011 WL 1740270, at *13 (S.D. Tex. May 5, 2011) (collecting cases) ("Having a business relationship with a RICO enterprise does not constitute operation and management of the enterprise's affairs necessary for RICO liability."). The only facts alleged in the Complaint as to Coleman are that he provided ***precisely these kinds of services***, creating legal entities and researching the prices of certain procedures. *See* Complaint ¶ 37.

14. These barebones allegations also fail Rule 9(b)'s particularity requirements. The only allegation that Coleman acted with intent to defraud is a bare legal conclusion: "Coleman participated in this scheme aware of the fraudulent nature of the records being produced . . . with the specific intent to defraud." Complaint ¶ 37. Plaintiffs cannot just recant the word "fraud" like a talisman and expect to satisfy Rule 9. They must allege ***facts*** that, if true, could prove that Coleman knew that there was something improper in creating these entities and in researching the costs of certain procedures. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("The plaintiffs must set forth specific

5

facts supporting an inference of fraud."); *Benhamou*, 190 F. Supp. 3d at 659 ("[I]dentifying circumstances that indicate conscious behavior on the part of the defendant will support an inference of fraud and satisfy Rule 9(b)."). Plaintiffs have made no attempt to meet this burden.

15. Plaintiffs instead attempt to embellish their pleadings by claiming that Coleman "orchestrated" surgery costs projections and got paid for doing so. Even if that characterization was present in the pleadings – and it is not – it would be insufficient. Whether Coleman is alleged to have "orchestrated" the cost estimates or merely "researched" them (without a suggestion that the estimates themselves were in any way fraudulent) the pleadings would still fail to allege any facts suggesting that Coleman had reason to believe there was something improper in such actions. The failure to allege those facts requires that the claims against Coleman be dismissed.

### C. Plaintiffs did not plead their allegations against Mrs. O'Neal with the required particularity.

16. The Motion also pointed out that Plaintiffs have failed to allege that Mrs. O'Neal acted with the requisite fraudulent intent. Motion ¶¶ 52–58. Plaintiffs do not bother to include the conclusory allegations of fraudulent intent against Mrs. O'Neal that it asserted against several other Defendants. *Id.* ¶¶ 35, 36, 38–40. This failure to allege even boilerplate allegations of the requisite mental state – let alone allege the facts required under Rule 9 – itself requires that the claims against Mrs. O'Neal be dismissed. *See Dorsey*, 540 F.3d at 339.

17. All that Plaintiffs allege, both in their Complaint and (with slight rephrasing)

in their Response, is that Mrs. O'Neal authenticated the billing records generated through the alleged scheme. *See* Response ¶ 33; Complaint ¶ 30. But restating this allegation does not cure the failure to allege the correct legal standard for fraud. The Response also fails to address the other deficiencies pointed out in the Motion, including that there are no allegations that Mrs. O'Neal had a role in preparing any of the records she purportedly maintained, had any medical training, or had any reason to understand that a particular recommendation in a particular case was not medically necessary. Merely being the custodian of records for an entity does not render a person liable for every fraudulent act that might be committed by that entity when the law requires a showing of fraudulent intent.

### IV. PLAINTIFFS FAIL TO PROPERLY ALLEGE AN ASSOCIATION-IN-FACT

18. The Response clarifies that Plaintiffs are pleading that the alleged RICO enterprise is an "association-in-fact," something they alluded to in their Complaint but never actually stated. *See* Response ¶ 28. But even with that clarification, the Complaint fails to allege a legally cognizable association-in-fact enterprise.

19. First, the Motion pointed out that the Complaint does not allege that this collection of Defendants worked together outside of the alleged scheme, a requirement for pleading and proving association-in-fact RICO enterprises. *See* Motion ¶ 28; *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988) (holding that plaintiffs must allege an association-in-fact that has "an existence separate and apart from the pattern of racketeering"). The Response asserts that a "plain reading" of the pleadings indicates Plaintiffs have alleged Defendants worked together to "provide their respective medical services AND engage in racketeering activity." Response ¶ 23. That "plain reading"

7

apparently involves reading words that are not actually on the page, as the Complaint includes no such allegations.

20. For instance, Plaintiffs allege only that Coleman created legal entities and researched pricing for services as part of the alleged scheme. Plaintiffs do not allege that Coleman provided other, legitimate legal services to HMPA or took any other action that was not part of the alleged scheme. The same is true of the three passive entities noted above – ABC Surgical, Neches Anesthesia, and Baxter LLC. The only allegations in the Complaint regarding these entities is that they received illicit funds. Plaintiffs do not explain the role that these entities played in the provision of legitimate medical services or any other connection to the enterprise. The fact that Plaintiffs are now ready to concede in their Response that Defendants provided legitimate medical services does not change the fact that their pleadings do not include any such concession.

21. Second, Plaintiffs claim that the decision of the Fifth Circuit in *Plambeck* and of other district courts are "controlling" and require a finding that Plaintiffs properly pled a RICO enterprise. *See* Response ¶ 25. That claim is simply incorrect. The portion of *Plambeck* quoted in the Response merely states general standards for alleging an "ongoing" RICO enterprise, which are fully consistent with the cases Defendants cite in the Motion. *See Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015); *see also* Motion ¶¶ 29–30. Similarly, the opinion in *Benhamou* does not (as Plaintiffs suggest) control this case, as it is the decision of another district court. But that decision also involved an alleged enterprise of one entity and its two owners, a tight, ongoing business that is a far cry from the collection of doctors, entities, and other professionals alleged in

8

this case. *See Benhamou*, 190 F. Supp. 3d 631, 654.[2]

## V. PLAINTIFFS HAVE NOT PROPERLY PLED CAUSATION

22. Plaintiffs do not dispute that they must allege and ultimately prove that Defendants' actions were the "but-for and proximate cause" of Plaintiffs' alleged injuries. *See Plambeck*, 802 F.3d at 676. Such questions are highly fact-specific and do not ordinarily lend themselves to dismissal at this stage of litigation. But, Plaintiffs themselves have placed causation at issue by pleading that Defendants' bills were only a small part of the *Stowers* demands, conceding that some claims went to litigation in state court (and thus the *Stowers* demand did not force a settlement), and failing to acknowledge the crucial role played by third-party attorneys in quarterbacking *Stowers* demands. *See* Motion ¶¶ 18–25.

23. In the Response, Plaintiffs argue that the Motion relies on a "misunderstanding" of *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010). But Plaintiffs ***never actually identify that supposed misunderstanding***. In any event, as detailed in the Motion, *Hemi* lays out the general standard for proving RICO causation, including that a "theory of liability that rests not just on separate actions, but separate actions carried out by separate parties" can be too contingent to establish RICO causation. *Hemi*, 559 U.S. at 10–11. Defendants maintain that the intervention by independent third parties – including the lawyers for the insured – constitutes the type of break in the causal

---

[2] The minor factual differences the Response identifies between this case and *Allstate Ins. Co. v. Donovan*, Civil Action No. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012), and *State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F. Supp. 2d 639, 646 (N.D. Tex. 2002), do not render those decisions any less on point. As explained in the Motion, both decisions refused to find an association-in-fact when (as here) the plaintiff had failed to allege coordination between defendants outside of the alleged scheme. *See* Motion ¶¶ 29–30.

9

chain contemplated by *Hemi* and other cases. *See* Motion ¶ 22.

24. Plaintiffs also point to the decision in *Benhamou*, which found that plaintiffs had adequately pled RICO causation. Response ¶¶ 21–22; *see also Benhamou*, 190 F. Supp. 3d at 645. But there is no indication that the defendants in *Benhamou* made the same arguments as Defendants made in the Motion, i.e. that Plaintiffs' own allegations indicate that the costs submitted by Defendants were only part (often a small part) of the *Stowers* demands and that the actions of the lawyers in assembling, communicating, and negotiating settlement demands were intervening factors that broke the causal chain. These omissions limit the persuasive value of *Benhamou*.[3]

25. Finally, beyond the brief discussion of these cases, Plaintiffs make no effort to contend with Defendants' arguments, other than to assert the conclusion that Plaintiffs adequately alleged causation. *See* Response ¶ 21. Such bare conclusions cannot save the Complaint from its own omissions, which, as detailed in the Motion, fatally undermine Plaintiffs' allegations of causation.

## VI. CONCLUSION

26. For the reasons stated above and in the Motion, the Complaint does not state claims under which relief can be granted and should be dismissed. Defendants further request all additional relief to which they may be justly entitled.

---

[3] Plaintiffs summarily dismiss *Farmers Ins. Exch. v. First Choice Chiropractic & Rehab.*, No. 3:13-CV-01883-PK, 2016 WL 10827072, at *21–22 (D. Or. 2016 Feb. 25, 2016) by calling it "a state court case from (of all places) Oregon." Response ¶ 20. Defendants note that this is a U.S. District Court case that considered a RICO claim that mirrors the claim Plaintiffs assert in key respects. This Court can evaluate the relative persuasiveness of that order, but it is no more or less controlling than orders issued by other federal district courts.

DATED: August 20, 2021.

        Respectfully submitted,

        **DAVIS & SANTOS, P.C.**

        By: */s/ Jay Hulings*
        Jason M. Davis
        **Attorney-In-Charge**
        Texas State Bar No. 00793592
        Southern District No. 20114
        Email: jdavis@dslawpc.com
        H. Jay Hulings
        Texas State Bar No. 24104573
        Southern District No. 3472684
        Email: jhulings@dslawpc.com
        Stephanie L. Dodge
        Texas State Bar No. 24105336
        Southern District No. 3599198
        Email: sdodge@dslawpc.com
        719 S. Flores Street
        San Antonio, Texas 78204
        Tel: (210) 853-5882

        ***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I certify that on the 20th day of August 2021, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

        */s/ Jay Hulings*
        Jay Hulings